NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| L'INSTITUTE NATIONAL DE<br>L'AUDIOVISUEL,<br><br>        Plaintiff,<br><br>v.<br><br>KULTUR INTERNATIONAL FILMS, LTD.,<br><br>        Defendant. | Civ. No. 11-6309<br><br>OPINION |

THOMPSON, U.S.D.J.

This matter has come before the Court on Plaintiff L'Institute National De L'Audiovisuel's ("INA") Motion for Summary Judgment [docket # 7] seeking enforcement, pursuant to the New Jersey Foreign Country Money-Judgments Act, N.J.S.A. 2A:49A-16, *et seq.*, of a judgment from the Commercial Court of Paris, France entered on March 28, 2006. Defendant Kultur International Films, Ltd. ("Kultur") opposes this motion [13]. For the following reasons Plaintiff's motion will be granted.

I. **BACKGROUND**

INA is a public company organized under the laws of the Republic of France. It was created as a repository of all French government audio and audiovisual archives. INA owns the copyright for many of the recordings in its possession. Kultur is a Delaware corporation, with its principle place of business in New Jersey, which distributes audiovisual materials of theatrical and other visual art productions.

In 2003, INA initiated an action before the Paris Commercial Court against Kultur and Sound Ventures Production Ottawa Ltd. ("Sound Ventures") for copyright infringement. In this action, INA alleged that Kultur, along with Sound Ventures, unlawfully used certain television

1

clippings from a 1971 broadcast of a ballet entitled *La Sylphide* in order to produce a documentary.  Both Kultur and Sound Ventures appeared voluntarily and defended themselves before the Paris Commercial Court.  At the end of the proceedings, the French Court held in favor of INA and entered judgment in the form of equitable and legal relief.  In addition, the Paris Commercial Court found Kultur liable to indemnify Sound Ventures for any judgment against it based on a contract entered into between the parties.  Ultimately, the Commercial Court granted the following damages in favor of INA: (1) €47,000 as a direct judgment against Kultur; (2) €7,650 as an assessment of attorney's fees and costs in favor of INA, jointly and severally against Kultur and Sound Ventures; (3) €43,000 as a judgment against Sound Ventures, payable by Kultur as a result of the indemnification agreement.  At the prevailing exchange rate at the time of Plaintiff's motion, the sum of the French judgment is equal to approximately $135,000.  This judgment was affirmed by the Court of Appeals of Paris on April 10, 2009.

II.    **LEGAL STANDARD**

    A.  Summary Judgment Standard

        Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In deciding a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion."  Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted).  In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–

52 (1986).  More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party.  *Id.* at 248–49.  The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex,* 477 U.S. at 322.  Properly applied, Rule 56 will "isolate and dispose of factually unsupported claims or defenses" before those issues come to trial.  *Id.* at 323–24.

> B.  New Jersey Foreign Country Money-Judgments Act

The New Jersey Foreign Country Money-Judgments Act ("the Foreign Judgment Act" or "the Act"), N.J.S.A. 2A:49A-16, *et seq.*, is meant to provide a statutory basis for recognizing and enforcing judgments made in foreign courts.  A "foreign country money-judgment" is defined as "any judgment of a foreign state granting or denying recovery of a sum of money, other than a judgment for taxes, a fine or other penalty, or a judgment for support in matrimonial or family matters."  N.J.S.A. 2A:49A-17.

The Act provides in relevant part that, "[e]xcept as provided in section 5 of this act, a foreign country money-judgment meeting the requirements of section 3 of this act is conclusive between the parties to the extent that it grants or denies recovery of a sum of money. The foreign country money-judgment is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit."  N.J.S.A. 2A:49A-19.  Section 5 of the Act provides three situations in which a foreign judgment is not conclusive: (1) if the foreign system does not provide for an impartial tribunal compatible with due process of law; (2) if the foreign court did not have personal jurisdiction over the judgment debtor; and (3) if the foreign court did not have proper subject matter jurisdiction.  N.J.S.A. 2A:49A-20(a).  In addition, § 5 provides six

situations in which court may use its discretion in not recognizing a foreign judgment.  These

include situations where:

> (1) the judgment debtor in the proceedings in the foreign country court did not
> receive notice of the proceedings in sufficient time to enable the judgment debtor
> to defend;
> (2) the judgment was obtained by fraud;
> (3) the cause of action on which the foreign judgment is based is contrary to the
> public policy of this State;
> (4) the judgment conflicts with a prior final and conclusive judgment;
> (5) the proceedings in the foreign country court were contrary to an agreement
> between the parties under which the dispute in question was to be settled, other
> than by proceedings in that court; or
> (6) in the case of jurisdiction based only on personal service, the foreign country
> court was a seriously inconvenient forum for the trial of the action.

N.J.S.A. 2A:49A-20(b).  The party seeking to make use of one of these exceptions bears the

burden of proving its applicability, "except where it might be shown that fundamental fairness

would warrant shifting the burden . . . ."  *Kam-Tech Sys. Ltd. v. Yardeni*, 774 A.2d 644, 649–50

(N.J. App. Div. 2001).

III.    **DISCUSSION**

Defendant Kultur argues that the French judgment should not be recognized because it is

penal in nature and therefore it does not satisfy the definition of a "foreign country money-

judgment" as defined under the Act.  Moreover, Defendant argues that the French Court was a

seriously inconvenient forum, and this Court should therefore use its discretion and choose not to

recognize the French judgment.  Lastly, Defendant argues that even if the French judgment does

satisfy the definition of a foreign country money-judgment, the Court should not recognized the

attorney's fees and indemnification portion of the French judgment pursuant to N.J.S.A.

2A:49A-20(b)(3) and (5)—i.e., the award of attorney's fees is contrary to New Jersey public

policy and the indemnification judgment is contrary to the agreement between Kultur and Sound

Ventures.

A.  Was the French Judgment a "Fine or Other Penalty"?

As provided for under N.J.S.A. 2A:49A-17, the definition of a "foreign country money-judgment" does not include an award for money in the form of "a fine or other penalty." N.J.S.A. 2A:49A-17.  Defendant argues that the award issued by the French court is penal in nature because INA is a public entity and because the French court had no proofs on which to base its ultimate damages award.  In addition, Defendant points to the foreign court's use of the word "fraudulent" in the context of a copyright dispute as proof that the award was punitive in nature.

When promulgating the Uniform Foreign-Country Money Judgments Recognition Act ("the Uniform Act"),[1] the Uniform Law Commission (ULC) stated, "Courts generally hold that the test for whether a judgment is a fine or penalty is determined by whether its purpose is remedial in nature, with its benefits accruing to private individuals, or it is penal in nature, punishing an offense against public justice."  UNIF. FOREIGN-COUNTRY MONEY JUDGMENTS RECOGNITION ACT [hereinafter REVISED UNIFORM ACT], § 3, cmt. 4, 13 U.L.A. 7 (2005) (citing *Chase Manhattan Bank, N.A. v. Hoffman*, 665 F.Supp 73 (D. Mass. 1987)).  The United States Supreme Court has offered a similar rationale: determining whether something is penal in nature "depends upon the question whether its purpose is to punish an offence against the public justice of the State, or to afford a private remedy to a person injured by the wrongful act." *Huntington v. Attrill*, 146 U.S. 657, 673–74 (1892).  The New Jersey Supreme Court has often relied on the *Huntington* rationale when making a determination of whether a foreign law is "penal" as defined under the laws of New Jersey.  *See, e.g., City of Philadelphia v. Austin*, 429 A.2d 568,

---

[1] The precursor to this, the Uniform Foreign Money Judgments Recognition Act, is the basis for the New Jersey statute at issue.  *See* UNIF. FOREIGN MONEY JUDGMENTS RECOGNITION ACT [hrerinafter UNIFORM ACT], 13 U.L.A. 39 (1986).

570 (N.J. 1981) ("[P]unishment of a public offense is an essential characteristic of penal law.")

(citing *Huntington*, 146 U.S. at 673–74).  As the United States Supreme Court explained,

> [t]he test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual, according to the familiar classification of Blackstone: Wrongs are divisible into two sorts or species: private wrongs and public wrongs. The former are an infringement or deprivation of the private or civil rights belonging to individuals, considered as individuals, and are thereupon frequently termed "civil injuries;" the latter are a breach and violation of public rights and duties, which affect the whole community, considered as a community, and are distinguished by the harsher appellation of "crimes and misdemeanors."

*Huntington*, 146 U.S. at 668–69 (internal quotations omitted).  "New Jersey continues to apply a

narrow definition of 'penal' in its decisions involving foreign laws and judgments." *Republic of*

*Philippines v. Westinghouse Elec. Corp.*, 821 F. Supp. 292, 296 (D.N.J. 1993).

It is clear to the Court in this case that the damages award was compensatory in nature.

As Defendant readily admits, "the mere fact that INA is a French government agency does not

alone render the damages penal in nature . . . ." (Def.'s Br. 11).  In this case, the wrong sued

upon in France was an infringement claim on INA's intellectual property rights similar in nature

to federal copyright law.  INA is seeking to enforce its rights as the holder of a copyright——a

distinctly private role—and not in its role as the enforcer of public justice.

Furthermore, even though Plaintiff did not present proof as to actual damages, the French

court made a reasoned determination under the French doctrine of "power of assessment," which

permits the foreign court to make a determination as to what amount of damages would make

Plaintiff whole.  (*See generally* Baudelot Decl. Ex. B [hereinafter Judgment], 22).  In fact, the

French court gave Plaintiff less than it initially requested because "[t]he sums that it claims for

the various reasons stated hereinabove are disproportionate with respect to those that it could

have expected to receive in the context of an authorization to exploit [the copyright]." (*Id.*).  In

addition, the damages award is meant to constitute compensation "for all injuries relating to

fraudulent exploitation of the images." (*Id.* (emphasis added)).  This convinces the Court that the French judgment was meant to be compensatory in nature.[2]  As such, the French judgment is a "foreign country money-judgment" as defined under the Act.

      B.  Application of the Statutory Exceptions

Having determined that the French judgment falls within the scope of the Foreign Judgment Act, the Court must next turn its attention to whether any of the three exceptions to enforcement pointed to by the Defendant are applicable to this case.

First, Defendant argues that the French forum was "seriously inconvenient," and therefore the Court should use its discretion under N.J.S.A. 2A:49A-20(b)(6).  This provision permits the Court the discretion to not enforce a foreign judgment if, "in the case of jurisdiction based only on personal service, the foreign country court was a seriously inconvenient forum for the trial of the action."  N.J.S.A. 2A:49A-20(b)(6).  This permits non-recognition of "a judgment rendered in a foreign country on the basis only of personal service when it believes the original action should have been dismissed by the court in the foreign country on grounds of *forum non conveniens*."  UNIFORM ACT, § 4, cmt.,13 U.L.A. 39 (1986).  Although there appears to be no New Jersey cases addressing this issue, courts in other states addressing analogous state laws have found that this provision applies only in situations where the personal jurisdiction is based solely on personal service.  In *Colonial Bank v. Worms*, 550 F. Supp. 55, 59 (S.D.N.Y. 1982), for example, the court held that this provision was inapplicable because personal jurisdiction was based on both a prior agreement to submit to the foreign court's jurisdiction and on the voluntary

---

[2] The Court also agrees with the Plaintiff's argument that the foreign court's estimation is akin to an assessment of statutory damages under the Copyright Act.  The Copyright Act permits a copyright owner to receive statutory damages in the range of $750 through $30,000, "as the court considers just," in lieu of having to prove actual damages.  *See* 17 U.S.C. § 504(c)(1).  Statutory damages in this context would clearly be considered compensatory. *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998) (holding that litigants have a right to trial by jury in statutory damages cases under the Copyright Act) ("[T]he 'general rule' [is] that monetary relief is legal, and an award of statutory damages may serve purposes traditionally associated with legal relief." (internal citations omitted)).

appearance of the defendant.  In this case, Defendant voluntarily appeared to fight the allegations against it pending in France.  Thus, this exception is inapplicable.  *See, e.g., Bank of Nova Scotia v. Tschabold Equip. Ltd.*, 754 P.2d 1290, 1295 (Wash. 1988) (holding an identical Washington State provision inapplicable because personal jurisdiction in the foreign court was based on, among other things, voluntary appearance of the defendant); *see also Manches & Co.v. Gilbey*, 646 N.E.2d 86, 87 (Mass. 1995).

Second, Defendant argues that the Court should not recognize the attorney's fees portion of the French judgment because it is against the public policy of New Jersey.  This argument bears no merit.  Although both the New Jersey and federal courts generally follow the "American Rule" in regards to the awarding of attorney's fees, the Copyright Act—the state or federal law most clearly analogous to the legal issues presented in the French court—provides for fee shifting to the prevailing party.  *See* 17 U.S.C. § 505 ("In any civil action under [the Copyright Act], the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof . . . [and] the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.").  Therefore, the award of attorney's fees is clearly not against public policy.  Defendant argues that the French judgment did not award attorney's fees against Kultur and Sound Ventures jointly and severally, and therefore it is necessary to join Sound Ventures as a defendant in the case at bar.  This, however, is plainly false.  (*See* Judgment, 22 ("It seems equitable to award INA, pursuant to article 700 of the New Code of Civil Procedure [the attorney's fees provision], the €7,650 that it requests, and Kultur and Sound Venture shall thus be ordered *jointly and severally* to pay this amount." (emphasis added))).

Lastly, Defendant argues that it should not be liable for indemnifying Sound Ventures, as the French court's holding was in conflict with a plain reading of the contract between Kultur

and Sound Ventures.  The Foreign Judgment Act provides that the a court need not recognize a

foreign judgment if "the proceedings in the foreign country court were contrary to an agreement

between the parties under which the dispute in question was to be settled, other than by

proceedings in that court."  N.J.S.A. 2A:49A-20(b)(5).  This provision does not permit

Defendant to re-litigate the issue of indemnification.  The fifth statutory exception under

subsection (b) is concerned only with *proceedings* that are contrary to an agreement between the

parties, not *judgments* that are contrary to an agreement between the parties.  In other words, a

plain reading of N.J.S.A. 2A:49A-20(b)(5) shows that it is meant to address cases in which

proceedings take place in a foreign court in contravention of a valid forum selection agreement,

arbitration agreement, or settlement agreement.  The comments by the ULC in the 2005 revision

of the Uniform Act, on which N.J.S.A. 2A-49A-20(b)(5) was originally based, support this

notion: the comments to the revised Uniform Act[3] show that this provision is meant to

> allow[] the forum court to refuse recognition of a foreign-country judgment when the parties had a valid agreement, such as a valid forum selection clause or agreement to arbitrate, providing that the relevant dispute would be resolved in a forum other than the forum issuing the foreign-country judgment. Under this provision, the forum court must find both the existence of a valid agreement and that the agreement covered the subject matter involved in the foreign litigation resulting in the foreign-country judgment.

REVISED UNIFORM ACT, § 4, cmt. 9, 13 U.L.A. 7 (2005).

Under the Foreign Judgment Act, a foreign judgment "is enforceable in the same manner

as the judgment of a sister state which is entitled to full faith and credit."  N.J.S.A. 2A:49A-19.

The Full Faith and Credit Clause, however, does not permit a court to re-litigate claims that have

been reduced to judgment simply based on a mistake of law or fact.  *See Milliken v. Meyer*, 311

U.S. 457, 462 (1940) ("[T]he full faith and credit clause of the Constitution precludes any

---

[3] The revised addition of the Uniform Act provides that "[a] court of this state need not recognize a foreign-country judgment if: . . . (5) the proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be determined otherwise than by proceedings in that foreign court." UNIFORM ACT, § 4(c)(5), 13 U.L.A. 7 (2005)

inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based.  Whatever mistakes of law may underlie the judgment it is conclusive as to all the media concludendi." (internal citations and quotations omitted)); *see also Fauntleroy v. Lum*, 210 U.S. 230, 237 (1908) ("[A]s the jurisdiction of the Missouri court is not open to dispute[,] the judgment cannot be impeached in Mississippi even if it went upon a misapprehension of the Mississippi law."); Restatement (Second) of Conflicts of Law § 106; Restatement (Second) of Conflicts of Laws § 98, cmt. d (same as to foreign judgment).  Thus, Defendant may not use N.J.S.A. 2A-49A-20(b)(5) to re-try the issues presented before the French court.

None of the exceptions to enforcement of the foreign judgment on which the Defendant relies in this case are applicable.  Therefore, summary judgment is appropriate under the Foreign Judgment Act.

Defendant makes one final argument, which is that the Court should delay a decision pending fact discovery.  It does not appear to the Court, however, that fact discovery could in any way change the outcome of this case.  Defendant does not contest any facts relied on by the Plaintiff.  Moreover, Defendant has not submitted "an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained," as required under Fed. R. Civ. P. 56(f).  *Dowling v. City of Philadelphia*, 855 F.2d 136, 140 (3d Cir. 1988).  Therefore, this last argument is also without merit.

IV.     **CONCLUSION**

For the foregoing reasons, Plaintiffs motion for summary judgment will be granted.  An

appropriate order will follow.


 */s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.


Date: January 31, 2012